[Crim. No. 3870. In Bank.—September 26, 1935.]

THE PEOPLE, Respondent, v. ARTHUR D. WEST, Appellant.

Gerald J. Kenny, Public Defender, and James A. Toner, Assistant Public Defender, for Appellant.

U. S. Webb, Attorney-General, and Seibert L. Sefton, Deputy Attorney-General, for Respondent.

SHENK, J.—Arthur D. West and Howard P. Smith were by the same information accused of the murder of Roy V. Lockwood on October 4, 1934. Each pleaded not guilty, and West in addition pleaded not guilty by reason of insanity. They were tried jointly on the issues raised by the pleas of not guilty. The jury found West guilty of murder in the first degree, without recommendation, and returned a verdict of second degree murder as to Smith. Subsequently West withdrew his plea of not guilty by reason of insanity and has appealed from the judgment entered and sentence imposed pursuant to the verdict returned against him, and from an order denying his motion for a new trial.

The appellant, the deceased Lockwood and Smith were soldiers in the United States army. All three were stationed at the Presidio in San Francisco and were assigned to detail at Letterman General Hospital. The three shared the same barracks.

About 4:30 P. M. of October 4, 1934, they were off duty. West asked Lockwood at the barracks if he cared to drive down town for a bite of supper, to which Lockwood assented. West asked Smith to join them. Smith had just eaten a meal, but said he would go along. West carried with him a package wrapped in brown paper, without a string on it, which he said contained clothing he promised to deliver to a destitute woman who lived in a house on Ortega Street, which he would identify. The three entered Lockwood's one-seat car, with Lockwood at the wheel, Smith next to him and West on the right end of the seat. They drove from the Presidio through the Thirteenth Avenue exit, across Golden Gate Park to the neighborhood of Ortega Street and Thirty-seventh Avenue. West feigned to

be looking for the house of the fictitious destitute woman. While they were driving along Santiago Street approaching Forty-third Avenue, West drew a gun from the package on his lap and aimed it at Lockwood. Three shots were fired. The first entered Lockwood's chest. Another pierced his head and one entered the car door. Smith took control of the car, turned it into Forty-third Avenue, and brought it to a stop. West threw away a blue shirt which he had in the package with the gun. They left Lockwood and the automobile and boarded a street car back to town. They stopped at a cleaning establishment where blood was removed from the sweater Smith was wearing. They separated after they had agreed to make the statement, if questioned, that they had started to town with Lockwood, but parted from him at Van Ness Avenue and Geary Street.

They gave some such account when apprehended at the barracks about midnight that same night, but when they were confronted with evidence of the falsity of their statements—sand found in West's shoes, the gun in his locker, witnesses who saw them drive toward the Thirteenth Avenue exist from the Presidio, and other evidence—West and Smith made oral and written signed statements of the undisputed facts hereinabove narrated. It is in evidence further that at that time West stated that he bore a grudge against Lockwood because about a year prior thereto, while Lockwood and he were driving down the Skyline Boulevard, he stepped out of the car to buy a package of cigarettes and Lockwood drove away, leaving him to walk the major portion of the fifteen miles back to the city.

West took the stand in his own behalf. He testified that he was then thirty-three years of age; that he had attended school only as far as the third grade; that he enlisted at Atlanta, Georgia, and had been in the army since about June, 1929. He stated that some time in the month of July, 1934, he had asked Lockwood to pawn a watch and a ring for him; that Lockwood obtained $60 for the watch and ring and exhibited the receipt to him, but refused to turn over to him either the money or the receipt; that about a month prior to the shooting he purchased a gun, giving and signing a fictitious name, and about three weeks later he bought some cartridges. He stated further that he loaded five of the bullet chambers about noon of October 4th; that his intention was to use the

gun to bluff Lockwood into delivering up the pawn receipt, and that when he reached midway across Smith and aimed the gun at Lockwood's chest, the latter made a lunge at him across Smith and knocked West's arm and trigger finger back, causing one of the bullets to explode and strike Lockwood in the chest; that then everything went black; that they kept on arguing, Smith sitting with his arms folded, looking from one to the other, "so, then two more shots went off . . . to my unknowing". Smith, on the other hand, testified that after the first shot Lockwood made a feeble lunge at West and lay across Smith when the second and third shots were fired. Smith remained with folded arms until after the third shot, when he took the wheel and applied the brakes.

West admitted on the stand that when he filled five chambers of the revolver he was thinking of Lockwood and his desire to obtain the receipt from him, but that his intention was only to "bluff" Lockwood into giving up the receipt. From Smith's testimony we learn that about the time West purchased the gun, a 32-calibre Iver Johnson revolver, he exhibited it to Smith and, asking him if he could keep a secret, stated that he, West, was "going to get" Lockwood. Both men by their testimony indicated that the purpose of obtaining Smith's companionship on the drive was to give West the opportunity he sought, inasmuch as West felt he could not induce Lockwood to take him out unless some third person were along. West admitted on the stand that he put no string around the brown paper wrapped parcel and placed the gun merely on top of the shirt inside the package so as to be able more easily to take the gun from the package.

The main contention on the appeal is that there is lacking any evidence to establish the element of premeditation or preconceived design to kill essential to a verdict of first degree murder under the circumstances here disclosed. The foregoing brief outline of the salient facts and admissions of the appellant is sufficient refutation of any merit in that contention. In this case the question of intent, premeditation and malice were questions for the jury, and its finding thereon is well supported. Furthermore, a review of the record discloses that the appellant had a full and fair trial, without prejudice to any of his rights by reason of any ruling of the trial court, or in the giving of any instruction, or in the remarks of the deputy district attorney in his arguments to the jury. It also

appears without question that the oral and written statements made by the defendants were made freely and voluntarily and without any pressure or promise of immunity.

The foregoing conclusions also answer the appellant's contention that the trial court should have given some instruction to the effect that the testimony of the accomplice Smith was insufficient to connect the appellant with the crime unless it was corroborated by such other evidence as would tend to connect the appellant with the commission of the crime charged. An instruction on the subject was not requested by the appellant. The appellant concedes the proper test to be that if there be eliminated from the case the testimony of the accomplice, and an examination of the testimony of the other witnesses be had with a view to determine whether there be inculpatory evidence, and if such evidence be found, then the accomplice is corroborated. Such an examination of the record obviously meets the test in this case. The appellant's own statements and admissions, in connection with the other facts independently proved, afford corroborative proof sufficient to sustain the verdict. (*People* v. *Negra,* 208 Cal. 64, 69, 70 [280 Pac. 354], and cases cited.) The state of the record compels the conclusion that the appellant was in no respect prejudiced by the failure of the court, on its own motion, to give the instruction.

The judgment and order are affirmed.

Langdon, J., Seawell, J., Thompson, J., and Waste, C. J., concurred.

Rehearing denied.