## Kitchens v. Commonwealth.

Oct. 3, 1939.

Clarence Bartlett, Judge.

G. D. Milliken, Sr., for appellant.

Hubert Meredith, Attorney General, and J. M. Campbell, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE RATLIFF—Reversing.

The appellant, Garland Kitchens, has appealed from a judgment of the Butler circuit court sentencing him to the penitentiary for 21 years on the charge of armed robbery. The grounds insisted on for reversal are: (a) That the court erred in failing to sustain appellant's motion for a directed verdict in his favor; and (b)

that the court erred in rejecting certain evidence offered by appellant in rebuttal.

There is but slight, if any, evidence tending to connect the appellant with the offense charged, except that of accomplice witnesses, Bill Dickerson and Thurston Wilson.

Bill Dickerson testified, in substance, that on the night of November 28, 1938, the appellant came to his home at Pleasant Rock, a few miles from Morgantown, Kentucky, and called him at about 6:30 P. M.; that appellant was in a car with two girls, Eva Mae Kitchens and Lois Phelps; that he got in the car with them and went to Morgantown and went to the home of Thurston Wilson, who lived in Morgantown, and then he, appellant and Wilson went to Dunbar, about four and a half miles from Morgantown, and robbed Hiram Kitchens, who was a great uncle of appellant. He said, in substance, that appellant made known to him the purpose of the trip to Dunbar, and he understood that they were to commit the robbery in question; that appellant had told him a day or two previous that his great uncle, Hiram Kitchens, had some money and that it would be easy to rob him and that no one would know anything about it. They arrived at Hiram Kitchen's store and gas station some time after 8:00 o'clock and he, Dickerson, called Hiram Kitchens and told him he wanted some gas; that appellant had told him to tell Hiram Kitchens that he, Dickerson, was Odel Lee. Hiram Kitchens had retired, but he responded to the call and went into his store, which was in connection with the dwelling, and then to the gas station, and while he was pumping the gas into the car, appellant slipped around behind him and struck him with a club and then went into the store and brought out a money drawer containing twenty-six $1 bills, and they then got into the car and went back to Morgantown. However, before reaching Morgantown, they stopped and divided the money and left the money drawer at or near the roadside. The evidence of Thurston Wilson, the other accomplice, was, in substance, the same as that of Dickerson. The two accomplices said that while in Morgantown, they and appellant were together, visited a pool room and perhaps other places. In this, they were corroborated by other witnesses who saw appellant and accomplices together in Morgantown.

Hiram Kitchens testified that he was appellant's great uncle and had known appellant all of his life, and that appellant frequently came to his place of business; but he did not know Thurston Wilson and Bill Dickerson. He said that the robbery occurred between 8:30 and 9:00 P. M., and that he had retired when he was called. He was asked to tell in his own words what happened, and he answered as follows:

"I heard a car pass my place of business, went down a little ways, and then it came back and stopped at gas tank, then blowed horn. Then someone came upon the porch in front of the house and called to me and I answered and he said he wanted some gas. I asked, who he was? He said he was Odel Lee. I knew Odel Lee that lived about town here.

"Q. Who is Odel Lee? A. He is Shelby Lee's son.

"Q. You knew him and were well acquainted with him? A. Yes, Sir, well acquainted. And then I got up and the store house and dwelling house joins. I got up, went out of room through kitchen into store, is a back door there, side door, and I had twenty-six $1.00 bills in my pocket and keep the keys in back part of the till of old fashioned money drawer, top till is where have change. Lit the lamp and left it. I put twenty-six $1.00 bills in there, got the keys and went out. I took flash light, left the lamp burning on the counter. I had flashlight. At gas tank I unlocked tank, commenced pumping gas. I noticed this boy. I said, 'Your name is Odel Lee?' I saw he was not the one I knew. He said, 'Yes.' I said, 'Whose son are you?' He said, 'Jim Lee's son.' After pumped gas, I gave him hose to turn gas loose in car, it goes in front of windshield. I held the flashlight on the register. I asked how many gallons he wanted and he said five. He handed me the hose and where hose goes into socket is 18 inches higher. It locks down there, it lifts over catch and locks. I was stooping this way locking tank, I saw him go up there, going to put top of gas tank on car and something hit me on the head.

"Q. Do you know what struck you? A. No sir, I don't. It knocked me to the ground, that is all I knew for while.

"Q. How many times were you struck? A. I don't know.

"Q. Were you hit more than once? A. I was there, I was hit there and I was hit here.

"Q. Show the jury where you were struck. "Witness points to places. * * *

"Q. What did they take from you, if anything? What did you miss? A. Twenty-six $1.00 bills and I missed this change taken out of tills.

"Q. Did you miss the tills? A. Yes.

"Q. What was removed from your store, and what was in it? A. This till—I had some keys in it, I had pocket book with old papers in it, he got that, and twenty-six $1.00 bills and he taken this till, I had to guess at amount of change, I am pretty sure amounted to about $30.00."

He further said that the blow knocked him unconscious, and that the first thing he knew he was sitting down on the porch in front of the store with his wife holding to him; that at the time he did not identify any of his assailants, nor the car, except that it was a Model "A" Ford with the gas tank erected in front, and that appellant owned that sort of car. It was further shown that a small amount of oil was found near the gas pump where the robbery occurred, which apparently had leaked from the car, and it is in evidence that appellant's car leaked oil. However, the evidence tended to further show that there were a number of Model "A" Ford cars in Butler County, and perhaps adjoining counties, and all of them have the gas tanks erected in the front of the windshield; and one witness testified that practically all of that class of cars leaked oil. The evidence of Hiram Kitchens, and the evidence of other witnesses, to the effect that appellant was seen in company with the accomplices in Morgantown, four and a half miles from where the robbery occurred, and that appellant's car answered the same general description of the one seen by Hiram Kitchens at the time and place of the robbery, is the only evidence offered or produced for the commonwealth, except that of the accomplices.

The evidence offered for the commonwealth, other than the accomplices, might have been sufficient to raise a suspicion of the guilt of appellant, but we do not

think that it measures up to the requirements of Section 241 of the Criminal Code of Practice, which provides as follows:

"A conviction can not be had upon the testimony of an accomplice, unless corroborated by other evidence tending to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely shows that the offense was committed, and the circumstances thereof."

We do not think that the mere fact that appellant owned a car answering the same general description of the one seen at the time and place of the robbery, is of probative value tending to connect appellant with the commission of the offense. It is not shown that appellant's car and the car seen by the prosecuting witness at the place of the robbery, bear any peculiar marks of identification tending to show that they were the same. It is only shown that they were of the same class of cars. It is thus seen that the evidence relating to the car does not any more tend to connect appellant with the commission of the offense than any other person who might own a car of the same class, or same general description.

The next phase of the evidence, is that appellant was seen in company with the accomplice at Morgantown, four and a half miles away from the place of the robbery, on the same night it was committed. Excluding the evidence of the accomplices, there is no evidence to show that appellant was at Warsaw, or nearer thereto than Morgantown.

In the case of Privett v. Commonwealth, 233 Ky. 471, 26 S. W. (2d) 3, the facts are practically the same as those in the present case. In that case the only testimony offered by the commonwealth connecting the accused with the crime, was given by an accomplice, that he, Edgar Garland, and the accused met at the latter's home at about 9:00 o'clock one evening and agreed to rob the store house of the Stearns Coal and Lumber Company located a mile or more therefrom; that pursuant to that agreement, they went to the store and robbed it of a certain amount of script and set the building on fire and it was burned. The accomplice detailed the process of hiding the script and other incidents that occurred immediately or following the commission of the offense. Another witness testified that he was at the

accused's house on the night of the commission of the offense and that the three defendants in the indictment left there together and returned later in the night, but that he did not know where they went or what they did while gone. The witness further said that the other accomplice, Edgar Garland, after the three had returned that night, said that he had "script enough to last him for a while," and that the accused said that "the Stearns Coal and Lumber Company would not let him work on the road and he had enough script to last him for a while," but the witnesses testified to no script in possession of accused or any one of the indicted defendants. It appears to us that the facts in the case supra, are stronger than those in the present case, insofar as the corroboration of the evidence of the accomplices is concerned. It was held, however, in that case that while the facts were sufficient to create a suspicion that the accused was guilty, yet they were insufficient to constitute the character of evidence required by the code, supra—tending to connect the accused with the commission of the offense.

Also, in the case of Hatton v. Commonwealth, 253 Ky. 103, 68 S. W. (2d) 780, the corroborative evidence offered in support of the accomplices who testified for the commonwealth, was to the effect that the accused was seen by two witnesses within three-fourths of a mile and two miles, respectively, from the scene of the housebreaking, in company with the accomplices on the same day of the crime. It was held that this evidence was insufficient to connect the accused with the offense. Compare, Means v. Commonwealth, 238 Ky. 366, 38 S. W. (2d) 193; Mauk et al. v. Commonwealth, 268 Ky. 237, 104 S. W. (2d) 955.

We find that the rule of our jurisdiction in respect to corroboration of the evidence of accomplices, is in harmony with the general rule of most, if not all, of the states of the Union. See C. J., Vol. 16, p. 708, and cases cited in notes thereto.

The facts in the record of this case, viewed in the light of the authorities, supra, impel us to the conclusion that the evidence of the accomplice witnesses was not sufficiently corroborated by the evidence of other witnesses to satisfy the requirements of the code, supra. Upon another trial of the case, if the evidence is substantially the same as in the present trial, the court will direct a verdict of not guilty.

For the reasons stated, the judgment is reversed with directions to set it aside and to grant appellant a new trial, and for proceedings consistent with this opinion.