[Crim. No. 3466. Second Dist., Div. One. Aug. 11, 1941.]

THE PEOPLE, Respondent, v. JOE SAWAYA, Appellant.

Morris Lavine for Appellant.

Earl Warren, Attorney General, and Bayard Rhone, Deputy Attorney General, for Respondent.

WHITE, J.—To a charge of burglary contained in an information filed by the district attorney of Los Angeles County, defendant entered a plea of not guilty. Trial by jury was duly waived, and the cause was submitted to the trial judge upon the reporter's transcript of the evidence adduced by the people at the preliminary hearing, which transcript was read aloud in open court by the deputy district attorney. No evidence was offered by the defendant either at the preliminary hearing or at the trial. Defendant was adjudged guilty of burglary of the second degree. When he was arraigned for judgment, the court suspended proceedings and placed the defendant on probation for the term of five years on condition that as a term of probation the defendant be confined in the county jail for a period of six months. No judgment having been pronounced, this appeal is from the order denying defendant's motion for a new trial.

The sole ground upon which a reversal is urged is that the evidence is insufficient to support the conviction,

for the asserted reason that the evidence offered to corroborate the testimony of the accomplices falls short of the requirements of section 1111 of the Penal Code.

The witnesses Stephen Gallina and Richard Spencer, admittedly accomplices, were apprehended when they attempted to dispose of six radios which they had stolen from the Times Theater in Los Angeles on the early morning of January 4, 1941. They confessed their guilt and testified for the prosecution at the trial of appellant. In substance, their testimony was that on the night of January 3, the appellant and the two witnesses went to a motion picture show at the theater. When they left the theater at about 11:30 or 11:45, they went out, according to one accomplice, by an exit from the balcony, closing the exit door gently so that it would appear closed when in fact it could be opened from the outside. About 1:30 a. m. they returned to the theater, entered through the balcony exit door, and took six radios from a showcase in the lobby. The next morning the witnesses attempted to sell the radios at a neighborhood radio shop, when they were arrested. Appellant did not accompany them to the shop, but was subsequently arrested at his home.

The only evidence offered to corroborate that of the accomplices consisted of the testimony given by Andrew Carson, who testified that some time between Christmas and New Years he had a conversation with appellant and the two accomplices while they were sitting in a car. So far as pertinent to a determination of this case, the testimony of this witness was as follows:

"Joe (appellant) mentioned there was some radios at the Times Theater . . . and it should be easy to get the radios, and we could possibly get about $10.00 apiece for them. Q. Did anybody else say anything? A. There was just a bunch of us boys talking. There was no definite arrangements made to do anything. Q. No definite arrangements when you were to get them or even get them, is that right? A. No. Q. Did anyone say anything to you about going to get the radios? A. No, we had not decided whether I was to go, I mean we had not decided when to go, just talking, the four of us. Q. When Joe said there was some radios over there to get and worth about $10.00 apiece, any of the other boys say anything

about the radios? A. We just agreed it could be done and that was all there was to it. Q. Do you remember what you said? A. No, I don't. I don't remember the exact conversation. Q. Did you agree to go with them? A. No, sir.''

The witness further testified that he did not go with the others to the theater, and did not see appellant again between the time of the conversation and the night of January 3. On cross-examination he further testified:

"Q. You talked about many things, didn't you? A. Just an ordinary conversation. Q. I don't presume you know who first mentioned the radios, do you? A. Joe did. Q. Joe mentioned the subject of the radios? A. Yes. Q. He was the first one that brought the subject up? A. Yes, he was. . . . ''

Respondent urges that the foregoing testimony, taken in connection with the fact that appellant and the accomplices were boyhood friends and school-day associates, coupled with the fact that appellant did not take the stand in his own behalf, measures up to the demands of section 1111 of the Penal Code. This section reads as follows:

''A conviction cannot be had upon the testimony of an accomplice unless it be corroborated by such other evidence as shall tend to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof. An accomplice is hereby defined as one who is liable to prosecution for the identical offense charged against the defendant on trial in the cause in which the testimony of the accomplice is given.''

In *People* v. *Shaw*, 17 Cal. (2d) 778 [112 Pac. (2d) 241], at 803, in speaking of the kind of testimony required to corroborate that of accomplices, our Supreme Court said: "The evidence must tend *directly and immediately* to connect the defendant with the commission of the offense." Where, as in the instant case, the crime charged rests primarily and solely upon the testimony of the accomplices, it is essential as a prerequisite to the conviction of the defendant that the testimony of the accomplices be corroborated in the manner and form prescribed by section 1111, Penal Code. ■ The true test of the sufficiency of the corrobora-

tive evidence has been thus tersely stated by the Supreme Court of this state in *People* v. *Morton,* 139 Cal. 719, 724 [73 Pac. 609], quoting with approval the following language from *Welden* v. *State,* 10 Tex. App. 400: " . . . eliminate from the case the evidence of the accomplice, and then examine the evidence of the other witness or witnesses with the view to ascertain if there be inculpatory evidence—evidence tending to connect the defendant with the offense. If there is, the accomplice is corroborated; if there is no inculpatory evidence, there is no corroboration, though the accomplice may be corroborated in regard to any number of facts sworn to by him."

 It is required by law that the testimony offered in corroboration of the testimony of an accomplice shall *of itself* tend to connect the defendant with the commission of the offenses charged. (*People* v. *Davis,* 210 Cal. 540, 555 [293 Pac. 32].) In considering the corroborative testimony in the case at bar, it becomes necessary at every point to explain this "corroboration" in the light of the testimony of the two accomplices. In other words, the testimony of the accomplices is required to give to the "corroboration" direction to the alleged crime, before such corroborative testimony can be said to connect the defendant with the commission of such crime. It is at once evident that when the testimony of the accomplices is withdrawn from consideration, no direct and immediate connection remains between the defendant and the alleged offense, hence it cannot be successfully argued that the asserted corroboration tends to connect defendant with the commission of such offense.

 Furthermore, it is the established law of this state that more is required by way of corroboration than mere suspicion. (*People* v. *Kempley,* 205 Cal. 441, 456 [271 Pac. 478], and cases therein cited; *People* v. *Davis, supra.*) While without the aid of the accomplices' testimony in the case now under consideration the corroborative evidence, standing alone, might be said to generate a suspicion of defendant's guilt, that is not sufficient, because in whatever light the corroborative testimony is viewed, it still requires recourse to the testimony of the accomplices to give it direction. It may be, as claimed, by respondent, that appellant is guilty, but whether guilty or innocent, he was entitled to have his case fairly tried according to established rules of law.

"Though unfair means may happen to result in doing justice to the prisoner in a particular case, yet, justice so attained, is unjust and dangerous to the whole community." (*Hurd* v. *People*, 25 Mich. 405.)

 While conceding that "the corroborating evidence is slight," the attorney general argues that when taken in connection with the fact that at the trial appellant availed himself of his constitutional prerogative (sec. 13, art. I, Const.), and did not take the witness stand to deny either the accusations of the accomplices or the slight corroborative evidence, the latter measures up to the standards prescribed by section 1111, Penal Code. The fact that the constitutional provision provides that in a criminal case, whether or not the defendant testifies, his failure to explain or deny by his testimony any evidence or facts in the case against him may be commented upon by the court or counsel and may be considered by the court or the jury, does not deprive a defendant of his right to stand mute, nor does it relieve the prosecution of the burden of establishing his guilt beyond a reasonable doubt, and by competent and legal evidence. The exercise by a defendant of his constitutional privilege to remain silent and demand that the people make the case against him beyond a reasonable doubt, does not of itself directly and immediately tend to connect him with the commission of the crime charged against him. When a defendant chooses not to explain allegedly incriminatory circumstances of his guilt in the form of testimony offered in corroboration of testimony given by conceded accomplices, and when as a matter of law such corroborative evidence falls short of the quality and kind demanded by section 1111, Penal Code, this court is given no alternative but to set aside an ensuing conviction based thereon.

The order denying defendant's motion for a new trial is reversed, and the cause remanded for a new trial.

York, P. J., and Doran, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied September 10, 1941.