[Crim. No. 4991. In Bank. Sept. 29, 1949.]

THE PEOPLE, Respondent, v. CLYDE LESTER HENDERSON, Appellant.

Saul J. Bernard for Appellant.

Fred N. Howser, Attorney General, and Dan Kaufmann, Deputy Attorney General, for Respondent.

SHENK, J.—This is an appeal from a judgment of the court without a jury finding the defendant guilty on charges growing out of an attempted robbery, and from the order denying a motion for a new trial.

About 1:30 a. m. on December 29, 1947, two men wearing overcoats and hats, and having flesh-colored stocking hoods over their heads, entered a café in Altadena and ordered the persons present to face the bar and put up their hands. One carried a sawed-off .410 single barrel shotgun, the other a pistol. As the proprietor, employees and patrons were obeying the order, the shotgun was discharged by one of the men whereupon they fled without taking anything. The organist, a customer and William Lewis Roberts, the other of the offenders, were wounded by shot from the gun.

William Lewis Roberts and the defendant were jointly charged with complicity in the matter. The charges were dismissed as against Roberts. An amended information, containing four counts, accused the defendant of attempted robbery, two assaults with a deadly weapon with intent to murder the two persons in the café, and assault with a deadly weapon upon Roberts; and alleged the prior conviction in October, 1947, in California of receiving stolen property, a felony.

The defendant entered a plea of not guilty to each of the four counts and admitted the prior conviction. He waived a trial by jury. On the trial Roberts testified for the prosecution. The court found the defendant guilty on all four counts and denied his motion for a new trial.

It is not questioned that the evidence is sufficient to support the judgment if the testimony of the accomplice Roberts is sufficiently corroborated.

Section 1111 of the Penal Code requires corroboration of an accomplice's testimony by such other evidence as shall tend to connect the defendant with the commission of the offense, and provides that corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof.

Although the corroborating evidence must raise more than a conjecture or suspicion of guilt, it is sufficient if it connect the defendant with the commission of the crime in such

a way as reasonably to satisfy the fact finding body that the accomplice is telling the truth. (*People* v. *Trujillo*, 32 Cal.2d 105, 110-111 [194 P.2d 681].) ██ The evidence of inculpatory participation need not be direct nor extend to every fact and detail. It may be circumstantial and is sufficient, even though slight, if it tend to connect the defendant with the commission of the crime. (*People* v. *Negra*, 208 Cal. 64, 69-70 [280 P. 354]; *People* v. *Yeager*, 194 Cal. 452, 473 [229 P. 40].)

██ Possession of a gun similar to that used in the commission of the crime has been deemed competent corroborative evidence (*People* v. *Trujillo, supra,* 32 Cal.2d 105; *People* v. *Radovich,* 122 Cal.App. 176, 181 [9 P.2d 542]), and it is not necessary that the gun be introduced into evidence. (Code Civ. Proc., § 1954; *People* v. *Anderson,* 87 Cal.App.2d 857, 861 [197 P.2d 839].)

██ The relationship of the men and all of their acts and conduct may be considered in determining whether there are corroborating circumstances. (*People* v. *Ross,* 46 Cal.App.2d 385 [116 P.2d 81]; *People* v. *Willmurth,* 77 Cal.App.2d 605, 611 [176 P.2d 102].)

The testimony of Roberts disclosed the following: He and the defendant are cousins and had been companions of long standing. Before the present charge of attempted robbery both had run afoul of the criminal laws of this state. Roberts was on parole following convictions of rape and burglary. The defendant was under charge of automobile theft for which he was subsequently convicted. (At the trial, as related, he admitted a prior conviction of receiving stolen property, a felony.) About two weeks before the attempted robbery the two had a conversation in which the defendant stated that he knew ''where we can make a piece of money.'' Roberts said ''where and how?'' The defendant replied ''at Brandon's Café'' on Fair Oaks Avenue. Roberts asked him how he knew that there would be money at that place and defendant's reply was that his father had ''cased'' the place and had informed him that it was good for at least $1,500 on a Sunday night just before closing time, and that the money would be ''in a sack under the bar.'' Roberts at first said that he ''had just got out of prison'' and wanted no part of it, but later he agreed to go along with the plan. The defendant stated that they needed a gun. Roberts said that his sister, Inez Bustos, who lived in Burbank, had a .410 shotgun which might be

obtained. On the afternoon of Sunday, December 29th (the attempted robbery took place at about 1:30 a. m. following) the defendant and Roberts, in the company of two women friends, called at the home of Mrs. Bustos, using the defendant's Chevrolet car. During the course of an afternoon party at that place Roberts proposed to his sister that he borrow the .410 shotgun, on the pretense that he and the defendant wanted to go rabbit hunting. The sister refused, whereupon Roberts suggested that he buy the gun. The sister refused on the ground that he was not allowed to have a gun in his possession. Roberts then proposed that she sell the gun to the defendant. She consented provided he would pay her price of $25. This was agreed to and when the two men left the sister's home in the late afternoon they took the shotgun with them, placing it in the back of the car with some shells which Roberts had obtained from a chest of drawers in the bedroom where the gun had been kept. After the two left with their women friends, the four visited eating and drinking places until later in the evening when the women were returned to their homes.

Roberts and the defendant then went in the latter's automobile to a house in Pasadena where the defendant's wife Mickey Henderson was living with her 6-year-old son. From there the two went to Monrovia to the house of the defendant's father where, with the defendant's assistance, the father, in the latter's garage, sawed off about one-half of the barrel of the shotgun while Roberts held a light. It was then that the father again related how easy it would be to obtain the money from Brandon's Café. For his part in the enterprise and in "fingering" the job he was to receive $250 of the loot. From the father's home the two returned to the defendant's place in Pasadena where at the defendant's request his wife cut some flesh-colored stockings for masks and made slits in them for eye holes. It was there that the defendant picked up a black toy pistol belonging to his son and handed it to Roberts for use in the holdup. They waited at that place until about 1 o'clock in the morning which was estimated as about closing time at the café. For Mickey Henderson's part in the transaction and in furnishing the "hide-out" to stay "under cover" she was to receive $250.

Roberts and the defendant then went about half a block from his house and entered a "Chrysler or a De Soto" car which Roberts understood was a stolen car. They put on the flesh-colored stocking hoods and proceeded to Brandon's Café.

They entered and the defendant shouted "This is a stick-up, everybody turn around and face the bar and put your hands up." There were from 10 to 14 people in the café at the time. Roberts, with the toy pistol which resembled a .38 automatic, in one hand, walked toward the "end of the bar to go around and pick up the money where it was supposed to be" and get out as quick as he could. When Roberts was "about half way up the bar" the sawed-off shotgun in the hands of the defendant accidentally discharged. Some of the shot struck Roberts on the right side of his face, resulting in the loss of sight in his right eye. Barton Williams, the organist, was hit in the back of the neck, the shoulders and his right hand and he fell to the floor. A customer, Richard Berry, was hit in the face and rendered unconscious. Roberts and the defendant fled through the door at which they had entered and escaped without consummating the robbery. They went to the defendant's house in Pasadena where Roberts fainted. He was revived by the treatment of cold compresses administered by the defendant's wife. Before daybreak he was taken by Floyd Henderson, the defendant's father, and Lester Henderson, the defendant's uncle, to the latter's home in Colton many miles distant. Later in the day the defendant "showed up with a doctor" who, Roberts understood, was a chiropractor. Roberts stayed at the house of Lester Henderson in Colton for over a week. He did not see the defendant again until "a few days before he [the defendant] was sentenced to San Quentin for car theft" which was some time in February, 1948.

The defendant did not testify. Neither did his wife, nor his father. His uncle Lester Henderson was called as a witness for the prosecution but the court sustained him in his refusal to answer questions on the ground that his testimony might incriminate him and he was dismissed from the witness stand without testifying.

It is contended that the testimony of the accomplice Roberts is lacking in corroboration sufficient to connect the defendant with the commission of the offenses. An examination of the record shows corroboration in the following respects:

It was established by the testimony of the accomplice's sister and by the two women companions that Roberts and the defendant were together most of the day preceding the attempted robbery and that they were together in the defend-

ant's car when the women were taken to their homes which was about three hours before the crime was committed.

It was established by the testimony of the accomplice's sister that in the afternoon of the day preceding the crime she sold a .410 shotgun to the defendant for $25 and that the gun was taken from her home on that day.

The testimony of Roberts that the gun used in the attempted robbery was the .410 gauge shotgun purchased from the sister was corroborated by the testimony of the victim customers in the café at the time of the crime who stated that the gun discharged was a sawed-off shotgun. One of these witnesses testified that he was familiar with firearms and that the gun discharged was a .410 gauge shotgun.

The testimony of Roberts that he held the black pistol and that the defendant held the shotgun at the time of its discharge has some corroboration in the testimony of the victims in the café who stated that one of the culprits had a shotgun and the other a black pistol.

The testimony of the victims in the café that both men wore flesh-colored stockings as hoods with slits cut in them for eye holes shows circumstances in substantiation of the testimony of Roberts that he and the defendant wore hoods so described by him at the time of the commission of the crime.

We are satisfied that the cumulative effect of the testimony of the women companions of the two men, the testimony of Roberts' sister and the testimony of the victims in the café, none of whom could be deemed accomplices, point sufficiently to the establishment of the fact that the defendant was the other participant in the crime, and that the code requirements of evidence tending to connect the defendant with the commission of the crime have been sufficiently met.

The defendant's reliance on *People* v. *Sawaya,* 46 Cal. App.2d 466 [115 P.2d 1001], is of no assistance to him. In that case the purported corroborating evidence consisted solely of testimony of association and a conversation antedating the day of the crime. There was an absence of any evidence tending to connect the defendant with the commission of the crime. ■ When as in the present record it is discovered that there is testimony aside from that of the accomplice which tends to connect the defendant with the commission of the crime, the function of the appellate court is performed. Questions of the weight of the evidence and the credibility of the witnesses are for the trial court, and since the circumstances reasonably justify the finding of guilt, an

opposing view that they also may be reconciled with innocence will not warrant interference with the judgment on appeal. (*People* v. *Newland,* 15 Cal.2d 678, 681 [104 P.2d 778], and cases cited.)

 No merit may be accorded the defendant's contention that, as Roberts is a confessed accomplice, the charge in the fourth count of assault with a deadly weapon upon him does not constitute an offense. The principle that the shooting of a person other than the one intended transfers the intent to the former (*People* v. *Wells,* 145 Cal. 138, 140 [78 P. 470]), has been applied where one of the participants in a robbery accidentally killed another. (*People* v. *Cabaltero,* 31 Cal.App.2d 52 [87 P.2d 364].)

The judgment and order are affirmed.

Gibson, C. J., Traynor, J., Schauer, J., and Spence, J., concurred.

CARTER, J.—I dissent. The evidence purporting to connect defendant with the robbery is clearly insufficient to corroborate the testimony of the accomplice Roberts. I reaffirm my views expressed in *People* v. *Trujillo,* 32 Cal.2d 105 [194 P.2d 681], but am compelled to point out that the corroborating evidence here is even weaker than that in the Trujillo case. Here the sole evidence is that defendant obtained and thus had in his possession before the robbery a .410 gauge shotgun. There is no independent evidence as to whether such gun had a normal barrel or a shortened one, whether it was a double or single barrel gun, or whether it was a single shot, repeater or automatic. In fact there is no description whatsoever of the gun except that it was a .410 gauge shotgun. The evidence concerning the gun used in the robbery is even more vague. One witness said that he did not notice whether the barrel was shortened and later that it was "sawed off"; that it looked like a small caliber shotgun. One witness testified that the report when the shotgun was discharged sounded like a .410 gauge. No other description of the gun was given. It seems manifest to me that there was a total absence of evidence to show that the gun obtained by defendant was the same gun that was fired at the robbery. Such being the case, there is no corroborating evidence connecting defendant with the robbery. In *Kitchens* v. *Commonwealth,* 279 Ky. 785 [132 S.W.2d 327], the corroborating evidence offered was the statement by an eye-

witness that a car seen at the scene of the crime was of the same general description as one owned by defendant. Finding such evidence insufficient, the court declared: ''We do not think that the mere fact that appellant owned a car answering the same general description of the one seen at the time and place of the robbery, is of probative value tending to connect appellant with the commission of the offense. It is not shown that appellant's car and the car seen by the prosecuting witness at the place of the robbery, bear any peculiar marks of identification tending to show that they were of the same class of cars. It is thus seen that the evidence relating to the car does not any more tend to connect appellant with the commission of the offense than any other person who might own a car of the same class, or same general description.'' The same reasoning applies here. Merely because a shotgun of a certain gauge (although the evidence is far from satisfactory on that subject) was used in the commission of the crime and that that class of a gun was in defendant's possession is not enough to inculpate defendant. If it is, then all those persons owning .410 gauge shotguns, .38 caliber revolvers, or any of the other varieties of firearms, are under suspicion when a crime is committed wherein a gun such as he owns is used. This is especially pernicious when it is remembered that there was no independent evidence showing that defendant was present at the scene of the crime or any place in that vicinity.

Stress is laid by the majority on the testimony of Roberts that hoods were worn by him and defendant and the testimony of the people in the café that hoods were worn, but corroborating evidence must tend to *connect defendant with the crime*. I fail to see how such evidence would have that effect. Suppose both groups of evidence showed the participants wore hats, or pants, or were men, or women. Certainly that would not show any connection of the defendant with the crime.

There being no evidence, other than the testimony of an accomplice, connecting defendant with the crime charged, I would reverse the judgment.