[Crim. No. 4994.   Second Dist., Div. Three.   Oct. 23, 1953.]

THE PEOPLE, Respondent, v. WILLIS ST. CLAIR KENNEDY, JR., Appellant.

William Herbert Hall for Appellant.

Edmund G. Brown, Attorney General, and Alan R. Woodard, Deputy Attorney General, for Respondent.

WOOD (Parker), J.—Defendant was charged in seven counts with issuing checks without sufficient funds. Trial by jury was waived. He was acquitted upon the first three counts and was convicted upon the other counts. His notice of appeal states that he appeals from the judgment and sentence. His contention is that the evidence was insufficient to support the conviction.

The following references to the evidence pertain to the last four counts.

On June 15, 1952, Fyeem A. Joseph handed a check for $20 to the assistant manager of Crawford's Markets at said market in Alhambra. The assistant manager O.K.'d the check, and the cashier gave Joseph $20 in exchange for the check. The assistant manager testified that, at that time, he saw defendant Kennedy "out in the car," and after the check was cashed he saw Joseph get in the car and saw defendant drive away.

About June 23, 1952, the owner of the Monte Vista Market in Montebello cashed a certain check for $20.

On June 23, 1952, Joseph handed a check for $20 to the cashier at the Market Basket market in Whittier, and she gave him $20 in exchange for the check.

On June 23, 1952, Joseph handed a check for $20 to a food clerk at the Safeway Store in Whittier, and she gave him $20 in exchange for the check. She testified that defendant was with Joseph when the check was cashed.

Joseph testified that the pen and ink writing on the front of said checks was his handwriting; and that the defendant was with him when he cashed the checks—with him "in the car when those checks were passed."

The four checks, above mentioned, bore the purported signature of Fyeem A. Joseph. None of said checks was paid by the bank upon which it was drawn. Defendant did not have an account at any of those banks and did not have any arrangement for credit with any of them whereby a check drawn by him upon any of the banks would be honored.

Officer Slosson testified that he arrested defendant on July 2, 1952, at the Shelly Air Base when defendant came out to an automobile; he (officer) found two sheets of paper under the front seat of the automobile, upon which papers there was handwriting. Those papers are referred to as Exhibit H. On that exhibit there were, in handwriting, the names and addresses of 16 food markets, including the names of the markets here involved where checks were cashed.

Officer O'Brien testified that, in his presence, the defendant wrote with pen and ink on a sheet of paper referred to herein as an exemplar of defendant's handwriting.

Mr. Harris, a handwriting expert, testified that, in his opinion, the names and addresses on Exhibit H, appearing under items listed as 6, 7, 8, 9, 10, 11, 12, 13, 14, 15 and 16, were written by the same person who made said exemplar of handwriting; he (witness) did not identify the handwriting in the word ''easy'' appearing after item 3 on the list, and he did not identify the ''O.K.s'' that are after most of the items.

Joseph testified further that he had known defendant about three months (at time of preliminary examination in July); some of the handwriting on Exhibit H was his handwriting; and the remainder of it was done by defendant; they were together when the list was made on June 23, 1952; ''It is a list of all the stores, classifying that each store that we went in or that I went in was either easy or hard to make; in other words, to make a store I would case the store and cash the check and if I had any trouble in cashing the check it would mean the store was either easy or hard''; about three weeks before Joseph (witness) started cashing checks, he asked defendant about his (defendant's) probation and ''how do you go about cashing these checks?''; he replied, ''It is easy''; defendant showed him how to make out the first one. When Joseph was asked if he had any conversation with defendant prior to cashing a check on June 14th, he said that ''[I]t was a question of we didn't have money to eat on, we were busted, and I was wondering where we could get some money to get by until he could get a pay check,'' and ''so we went and started cashing checks.'' He testified further that he asked defendant how to make it easier for Joseph to cash the checks; Joseph altered his chauffeur's license, and in making the alteration he used ink eradicator at defendant's suggestion; Joseph gave to defendant all the $1.00 bills and the change received when making a purchase and cashing the checks, and Joseph kept the $5.00 and $10 bills; Joseph was arrested on June 23, 1952, at a Market Basket market—he was overpowered by a civilian; at the time of his arrest he had a 1952 Buick with him, and in the glove compartment of it he had $825.

Officer O'Brien testified further that while he, Officer Slosson and defendant were riding to Alhambra from the place

of defendant's arrest, he (Officer O'Brien) asked defendant if he had seen Exhibit H (the list of markets) before, and defendant replied that he had seen it; that later in that day, at the police station, he asked defendant who wrote the list, and defendant denied having seen the list before it was shown to him when he and the officers were on the way from the place of arrest.

Defendant testified that he had known Joseph about seven months (at the time of trial in September); he made a loan of $100 to Joseph; he (defendant) was in or outside some of the stores when Joseph cashed checks, but prior to going there he did not have any conversation with Joseph about the purpose of going to the stores; he and Joseph made the list of stores, Exhibit H, in June, 1952, at the place where defendant was living on 79th Street; the list contains handwriting of defendant and Joseph; he (defendant) was convicted "some time ago" of issuing checks without sufficient funds, was granted probation, and ordered to make restitution of $180; on June 26th he made restitution and also paid the fine of $100; he denied that there was any conversation between him and Joseph regarding the cashing of checks or classifying each store as easy or hard to make; he denied that he was with Joseph or in the car when Joseph cashed the checks, but he said that on one occasion he was in the car when Joseph went into a store to get meat and bread; he (defendant) did not tell the truth when he told Officer O'Brien, at the police station, that he had not seen the list; he denied that he had seen the list, because he heard that Joseph was in jail and he thought that the list might be connected with some trouble Joseph was in; Joseph told defendant that he was collecting bills for a man he was working for and he was getting a percentage, and the list was supposed to be a list of the stores he was collecting from; the notations made on the list by him and Joseph related to whether or not he collected "this money for this fellow." On cross-examination he said that the first five items on the list were written by Joseph, and that he (defendant) wrote some of the other items; all the store names and addresses were written at one time; defendant wrote the notations, "easy," "n.g.," and "o.k." after some of the items on the list; he believed that he made notations after eight of the items; he believed that most of the checks involved here were cashed at places shown on the list; he did not have a car; Joseph had a car which defendant drove on one occasion.

■■ Appellant argues that the only evidence that he aided and abetted Joseph was the testimony of Joseph, an accomplice, whose testimony was not corroborated; and that mere presence at the scene of the crime or mere association with Joseph was not sufficient proof of guilt. Section 31 of the Penal Code provides: "All persons concerned in the commission of a crime . . . whether they directly commit the act . . . or aid and abet in its commission, or, not being present, have advised and encouraged its commission . . . are principals in any crime so committed." In 8 California Jurisprudence, at pages 178 and 179, it is said: "Evidence to corroborate an accomplice need not . . . extend to every fact and detail covered by the statements of the accomplice, or to all the elements of the offense, or prove that the accomplice has told the truth. However, the corroborative evidence must tend in some slight degree, at least, to implicate the defendant." In *People* v. *Henderson,* 34 Cal.2d 340, it is said at page 343 [209 P.2d 785]: "The evidence of inculpatory participation need not be direct nor extend to every fact and detail. It may be circumstantial and is sufficient, even though slight, if it tend to connect the defendant with the commission of the crime." The testimony of Joseph was corroborated. The handwriting expert said that in his opinion appellant wrote most of the names and addresses on Exhibit H, the list of stores. Appellant admitted that he wrote some of the names and addresses thereon. Also he admitted that he wrote several of the notations thereon, such as "easy," "n.g.," and "o.k.," after some of those names and addresses. When he was arrested, as he came from his place of employment to an automobile, the said list was found under the front seat of the automobile. Soon after his arrest he said that he had seen the list previously. Later in that day, he said he had not seen the list prior to his arrest. At the trial, he admitted that he had not told the truth with regard to when he first saw the list. He also said that after he had helped make the list it was not in his possession. The checks involved here were cashed at stores which were included in that list. The assistant manager of Crawford's Markets saw appellant waiting in an automobile when Joseph cashed the check at that store and, after the check had been cashed and Joseph had gotten into the automobile, he saw appellant drive away. The clerk in the Safeway Store saw appellant with Joseph when Joseph cashed the check at that store. Appellant admitted, at the trial, that he was at some of the stores when

Joseph cashed checks. The evidence shows more than mere association with Joseph and more than mere presence at some of the places where the checks were cashed. The evidence was sufficient to support the judgment.

The purported appeal from the sentence is dismissed. (See *People* v. *Tallman*, 27 Cal.2d 209, 215 [163 P.2d 857].) The judgment is affirmed.

Shinn, P. J., and Vallée, J., concurred.