[Crim. No. 3677. First Dist., Div. Two. Dec. 2, 1959.]

THE PEOPLE, Respondent, v. MICHAEL TRAUB, Appellant.

Garcia & Wong for Appellant.

Stanley Mosk, Attorney General, Clarence A. Linn, Assistant Attorney General, and Peter T. Kennedy, Deputy Attorney General, for Respondent.

DOOLING, J.—Appellant Traub with others was convicted by a jury of conspiracy to violate Penal Code, section 266h (pimping), and section 240 of the San Francisco Police Code (prostitution). He was placed on five years probation on condition that he serve six months in the county jail and pay a fine of $500.

He claims on appeal: 1. that the evidence is not sufficient to support the verdict; 2. that the testimony of the accomplice is not sufficiently corroborated under Penal Code, section 1111; 3. that the court erred in admitting the evidence of three separate conversations with appellant. These contentions compel a rather detailed recital of the evidence.

Miss Susan Maurice testified to the following:

On September 9, 1958, she telephoned to one Kankas, a bellhop at the Lankershim Hotel in San Francisco, seeking employment as a prostitute. Pursuant to arrangement made with

Kankas she registered at the hotel that night shortly after 8 p. m. After going to the room assigned to her she was warned by Kankas that the police were coming and to get out the back way. The police stopped her and she returned to her room. Later that night Kankas told her that he wanted her to meet someone. Subsequently appellant, the hotel manager, came to her room. He asked her why the police had questioned her and she replied that there was some question about her age. He commended her on the way she had handled herself and told her that he wanted her to work at the hotel. He said that the "cut" would be 60-40, 40 per cent for the bellman, and that she should average at least $500 per week.

He told her not to begin work that night, because the police knew her room number, and might return, but to come back the following day with luggage, clothes and cosmetics, so that she would appear to be a permanent guest. He advised her to take a different room and to get some sort of identification to avoid a repetition of that evening's trouble and told her not to worry because everything would be taken care of.

The witness acquired a social security card under a fictitious name and returned to the hotel the following day. Appellant met her there, again suggested that she take a different room and repeated that she would be making $500 per week and that "it would be a gold mind [sic]." He added that he had another place and said that if Miss Maurice "worked out" she could work there and earn twice as much. Appellant introduced her to two other bellboys and in the presence of these two and Kankas told her that he wanted her to work the day shift with Bill, one of the bellboys present. He said that he also wanted her to work with the other bellhops, along with the other girls and if they had any other business they would give it to her, that the other girls were lazy and there were going to be some changes made. He told her to register under the fictitious name shown on her social security card. He said that "he knew why [she] was there" and told her not to acknowledge him anywhere unless he approached her first.

Miss Maurice registered and commenced to engage in prostitution. The usual procedure was for a bellhop to send her to the "customer." Following each assignment she would give her earnings to the bellhop and he would return 60 per cent to her at the end of his shift. She continued in this fashion for about two and a half months until on November 18, 1958, she went to the police and told them of her activities.

It is too obvious for elaboration that this evidence, with the

inferences that a jury might reasonably draw therefrom, if sufficiently corroborated, is amply sufficient to support the verdict against appellant.

 Under the decided cases the corroboration of the accomplice's testimony under Penal Code, section 1111, "must create more than a suspicion of guilt, but is sufficient even though it 'be slight and, when standing by itself, entitled to but little consideration.' [Citing cases.] It is sufficient when the evidence offered as corroborative tends to connect a defendant with the commission of the crime in such a way as reasonably may satisfy a jury that the accomplice is telling the truth. It is not necessary that the accomplice be corroborated as to every fact to which he testifies. If his testimony could be completely proven by other evidence, there would be no occasion to offer him as a witness. [Citing cases.] For the same reason, it is not necessary that the independent evidence be sufficient to establish the defendant's guilt. . . . It is the combined and cumulative weight of the evidence furnished by non-accomplice witnesses which supplies the test." (*People* v. *Trujillo,* 32 Cal.2d 105, 110-111 [194 P.2d 681].)

 "When . . . it is discovered that there is testimony aside from that of the accomplice which tends to connect the defendant with the commission of the crime" it is sufficient. (*People* v. *Henderson,* 34 Cal.2d 340, 346 [209 P.2d 785].)

 The corroboration may be found in the statements and admissions of the defendant himself, either standing alone (*People* v. *Zimmerman,* 65 Cal. 307 [4 P. 20] ; *People* v. *Griffin,* 98 Cal.App.2d 1, 25 [219 P.2d 519] ; *People* v. *Holt,* 88 Cal. App.2d 42, 44 [198 P.2d 58]) or coupled with other evidence (*People* v. *West,* 4 Cal.2d 367, 371 [49 P.2d 276] ; *People* v. *Negra,* 208 Cal. 64, 69 [280 P. 354]).

 Tested by these rules the testimony of the accomplice was sufficiently corroborated as the recital of the following evidence demonstrates:

1. Vincent Enright, room clerk at the Lankershim Hotel, testified that on September 10, 1958, appellant told him that a blonde girl who had stayed in room 702 the day before would drop her key off at the desk that afternoon and reregister at a weekly rate, that she was not under age because that had been questioned the day before, and that Enright should reserve room 633 for her. Enright identified Miss Maurice as the girl who afterwards presented him with the key to room 702 and registered in room 633 at the weekly rate.

2. A registration card in Miss Maurice's name for room 702 dated September 9, 1958, and a second registration card for room 633 in the fictitious name dated September 10, 1958, and initialed by Enright were introduced.

3. Police Officer Horan testified that on November 25, 1958, Miss Maurice entered the Lankershim with a microphone concealed on her person, by means of which the witness heard a conversation between her and appellant. Horan heard appellant tell Miss Maurice that Nick and Bob didn't work it like he did, that he used to run the whole thing himself without bellboys, that the girl would take her turn up in the penthouse, that Miss Maurice had come at a perfect time, that there were two girls there now but that either Nick or Bob had told him that one would not be there any more, and that he had known why she had come to the hotel in the first place because he had been in the business too long. He said that she came up with the right answers but they knew something was wrong. He asked her what she was doing and she replied that she was having a few "tricks" in her apartment. Appellant then said that he would be busy till after Thanksgiving.

4. Horan testified to tape-recording a telephone conversation between Miss Maurice and appellant on November 26, 1958, in which appellant told Miss Maurice that he couldn't say anything about her staying at the hotel and working there until he had talked with the boys, that it would be dead over the holidays, anyway, and that it would be better if she came in to see him later.

We are satisfied that this evidence as a whole meets the test of corroboration laid down in the cases. ▮ The testimony of the two conversations between Miss Maurice and appellant monitored by Horan is objected to on the ground that "a conspiracy cannot be established by extra-judicial declarations of a co-conspirator." (11 Cal.Jur.2d 253.) This rule obviously has no relevancy to a conversation of the defendant with a coconspirator. It is the statements of the defendant himself in such conversation from which his knowledge of and participation in the conspiracy may be reasonably inferred that makes the evidence relevant.

▮ Finally appellant complains of the admission into evidence of an interview had with appellant by an assistant district attorney after his arrest. Appellant cites *People* v. *Simmons*, 28 Cal.2d 699, 719 [172 P.2d 18]. The interview contained none of the incriminating hearsay testimony imported into the conversation by way of questions which was criticized

714

by the court in that case. The most that can be said is that appellant's answers to the questions put to him may not have been incriminating. Even conceding this we can find no substantial prejudice to appellant in allowing this conversation into evidence.

Judgment affirmed.

Kaufman, P. J., and Draper, J., concurred.