[Crim. No. 21617. Second Dist., Div. Two. Nov. 14, 1972.]

THE PEOPLE, Plaintiff and Appellant, v.
OCIE LOVE THURMAN, Defendant and Respondent.

## COUNSEL

Joseph P. Busch, District Attorney, Harry Wood and Robert J. Lord, Deputy District Attorneys, for Plaintiff and Appellant.

John N. Frolich for Defendant and Respondent.

## OPINION

**HERNDON, J.**—The People appeal from an order granting the respondent a new trial after a jury had convicted him of robbery. The appeal is authorized by Penal Code section 1238, subdivision (a)(3).

The case of the prosecution to a very large extent rested upon the incriminating testimony given by one Williams, an accomplice to the crime. The motion for a new trial was made and granted upon the sole ground that,

*as a matter of law,* the testimony of the accomplice was not sufficiently corroborated to satisfy the requirement of Penal Code section 1111.

We hold that the testimony of the accomplice was corroborated by other substantial evidence which tended strongly to connect respondent with the commission of the offense. This corroborating evidence is of such convincing quality that it must have satisfied the jury that the incriminating testimony of the accomplice, portraying respondent as an active participant in the planning and commission of the offense, was truthful.

### The Testimony of the Accomplice

There were four participants in the plan to rob the Broadway Department Store in Pasadena, two adults and two juveniles. The adults were respondent Thurman and his co-defendant Childress. The juveniles were Terrence Williams and Gregory Thames, both 16 years of age. It was arranged that the two juveniles would do "the dirty work." Williams and Thames were to enter the store, demand the money at gun point, and then make their escape in a stolen getaway car. Thereafter they were to meet respondent and Childress at a designated place to divide the loot.

Williams, having been granted immunity, testified that on the day before the robbery he and Thames met with respondent and Childress at a hamburger stand in Los Angeles and there made plans for the robbery. Thereafter the four of them drove to Pasadena in a green 1970 Chevrolet Nova with Childress driving.

On the following day the four again met and discussed plans for the robbery. In the Chevrolet Nova driven by Childress they drove to the Broadway store, circled it, and after further discussion went to a parking lot where Thames stole a 1964 maroon Chevrolet. Thereafter, according to plan, Williams and Thames returned to the Broadway in the stolen car while respondent and Childress returned in the Nova. Williams and Thames got out of the stolen car and went to the side of the green Nova in which respondent and Childress were seated. At this time Childress gave Thames a pistol and Thames handed it to Williams.

While both vehicles were stopped in the Broadway parking lot Childress undertook to explain the layout of the store to Williams and Thames. Later Childress accompanied Thames into the store to show him the layout while Williams sat in the Nova and talked with respondent. Williams had the gun in his waistband during this discussion with respondent. A few minutes later Childress and Thames returned to the Nova. Childress entered the car and Williams got out. Childress told Thames where they would

rendezvous after the robbery at a location some distance from the scene of the crime.

Childress instructed Williams to leave his wallet and jewelry in the Chevrolet Nova. Williams complied. He placed his wallet containing an identification card and other papers on the right rear floor of the Nova.

Williams and Thames then entered the store where Williams pointed the gun at a female employee and demanded money which she placed in a brown bag. Thames had brought a holdup note and the bag into the store. Williams received the bag from the victim, placed the gun in his waistband and left the store with Thames.

After the holdup Thames and Williams returned to the maroon Chevrolet. Thames got in, taking the driver's seat, and Williams seated himself in the passenger's seat. As they drove from the parking lot, Williams observed the Chevrolet Nova occupied by respondent and Childress parked down the street about a block away. As Williams and Thames approached it, the Nova was driven from the curb. Thames and Williams followed the Nova which made a right turn. After traveling only a short distance the Chevrolet driven by Thames crashed into the back of another car.

Immediately after the collision Williams and Thames jumped out of the stolen car and ran in the direction of the Nova. The Nova, however, continued to leave the scene. In pursuit Williams ran through back yards and over fences until at a place approximately two or three blocks from the scene of the collision he caught up with the Nova and approached it. Williams called out to Childress to stop. However, Childress called out in reply, "I'll be back to get you—hide," and drove away.

### The Corroborating Evidence

It would serve no useful purpose to lengthen this opinion with a detailed recital of the testimony of the several witnesses which in so many important particulars corroborated the testimony of Williams and tended to connect respondent and Childress with the commission of this robbery. Read in its entirety the record provides overwhelming evidence of respondent's guilt. The major elements of the corroborating evidence will be summarized briefly:

(1) The arresting officers testified that respondent and Childress, riding in their late model green Chevrolet Nova, were overtaken, stopped and arrested in the immediate vicinity of the robbery and very shortly after its reported occurrence.

(2) A female witness named Lindsey, who worked in a building located

only a short distance from the Broadway store, testified that on the evening of the robbery at about the time it was reported to have been committed she saw two Negro youths fitting the descriptions of Williams and Thames running from the direction of the store, crossing a lawn and hurdling a fence. This witness observed one of the youths carrying a brown object in his hand; saw him approach a slowly moving late model green Chevrolet Nova and heard him yell, "Hey in there." She saw the brake lights of the Nova light up but the vehicle continued to move on down the street.

(3) With the consent of Childress, one of the arresting officers searched the Nova and found a billfold on the floor of the vehicle behind the front seat. This billfold contained Williams' ID card and other papers which were identified by Williams' mother as his property.

(4) The brown bag containing the stolen money and the gun were received in evidence. These items were found by the officers beside the driveway of the building from which the witness Lindsey had observed the two youths running from the direction of the store and the actions of one of them in approaching the green Nova as it continued down the street.

### The Applicable Law

In *People* v. *Sanchez,* 232 Cal.App.2d 812, 816 [43 Cal.Rptr. 131], the governing law is stated as follows: "The test regarding the corroboration required by Penal Code section 1111, as stated in *People* v. *MacEwing,* 45 Cal.2d 218, 224 [288 P.2d 257], is as follows: 'The corroborating evidence is sufficient if it tends to connect the defendant with the commission of the crime in such a way as may reasonably satisfy the jury that the witness who must be corroborated is telling the truth. [Citations.]' The law is clear that the corroborating evidence need be but slight (*People* v. *Wayne,* 41 Cal.2d 814, 822 [264 P.2d 547]); that circumstantial evidence will suffice (*People* v. *Henderson,* 34 Cal.2d 340, 343 [209 P.2d 785]); and that only a portion—not all—of the accomplice's testimony need be corroborated (*People* v. *Traub,* 175 Cal.App.2d 709, 712 [346 P.2d 805])."

And as stated in *People* v. *Valerio,* 13 Cal.App.3d 912, 923 [92 Cal. Rptr. 82]: "From the foregoing discussion it is obvious that defendant's contention that his conviction rests entirely on the uncorroborated testimony of an accomplice is without merit. Corroboration of the testimony of an accomplice is, of course, required. (Pen. Code, § 1111.) Although the corroboration must connect the defendant with the commission of the offense, it 'may be slight and entitled to little consideration when standing alone.' (*People* v. *Wade,* 53 Cal.2d 322, 329 [1 Cal.Rptr. 683, 348 P.2d

116].) The requisite corroboration may be provided by circumstantial evidence. (*People* v. *Hurd,* 5 Cal.App.3d 865, 875 [85 Cal.Rptr. 718]; *People* v. *Haeberlin,* 272 Cal.App.2d 711, 722 [77 Cal.Rptr. 553].)"

The controlling law is stated in similar terms in *People* v. *Scofield,* 17 Cal.App.3d 1018, 1027-1028 [95 Cal.Rptr. 405], and in *People* v. *Johnson,* 18 Cal.App.3d 458, 464 [95 Cal.Rptr. 316, 96 Cal.Rptr. 695].

Respondent's contentions that the trial court should have granted his motion to dismiss made pursuant to Penal Code section 1118 and that he was arrested without probable cause are deemed not sufficiently substantial to require detailed discussion. Said contentions are therefore rejected summarily.

The order granting a new trial is reversed.

Roth, P. J., and Fleming, J., concurred.

A petition for a rehearing was denied December 7, 1972, and respondent's petition for a hearing by the Supreme Court was denied January 11, 1973.