[Crim. No. 2223.   Third Dist.   Jan. 8, 1951.]

THE PEOPLE, Respondent, v. ORVILLE WILLIAMS, Appellant.

Natalie J. Holly for Appellant.

Fred N. Howser, Attorney General, and Gail A. Strader, Deputy Attorney General, for Respondent.

VAN DYKE, J.—Appellant was charged in a single count with the crime of grand theft, the stealing of cattle. The information charged that he stole cattle belonging to Harold Lombardi, Louis Lombardi and Dr. A. E. Ghilotti. The trial was before the court without a jury, and appellant was found guilty. Probation was denied and he was sentenced to prison for the term prescribed by law. He appeals from the judgment.

Appellant contends here that the evidence is insufficient to support the judgment and particularly that the testimony of the accomplice fails to connect him with the commission of the crime and that the corroboration of the accomplice's testimony is legally insufficient.

The accomplice referred to, one Rushing, had previously been charged with the theft of the same cattle and had pleaded guilty to the theft of one and been granted probation. The following facts were sufficiently shown, without recourse to the accomplice's testimony. During the period involved appellant Williams was foreman of the Red House Ranch upon which Ghilotti's cattle, among others, were being pastured. Appellant testified that he had been handling cattle off and on since early youth. He had gone to work at the Red House Ranch January 1, 1948, working until early January, 1950. It was during the year 1949 that the cattle were taken. Ghilotti had put 25 Hereford heifers to pasture on the Red House Ranch January 12, 1949, and took them off the range May 25th following. At that time only 20 head were found, but later, in October, two more were recovered. Harold and Louis Lombardi ranged cattle near the Red House Ranch and just before April 4th appellant and other employees of the ranch, while working the ranch cattle, found 10 strays. Acting on information that they belonged to the Lombardis, the appellant sent word and Harold Lombardi and his brother Oswald came to see the cattle. They were being held in a field on the ranch which was fenced with woven wire with barbed or smooth wire strands above, and when inspected by the Lombardi brothers were in a group. Harold Lombardi testified at the trial that the 10 cattle belonged to him and his uncle Louis; that one belonging to Louis was branded with the figure "3" on the right hip, which was Louis' brand, marked with a underbit in the left ear and a down slit in the right and was a heavy-set white-faced Hereford heifer approaching three years of age and having a short and slightly dished face and a set in the hind legs; the marks and brands were plain and clear, the animals having been clipped. On the day following, Lombardi returned with a truck to get the Lombardi cattle and two were missing. They could not be found after a search. Appellant gave it as his opinion that they must have gone north and said he would look for them when he rounded up some cattle in that direction. One of them Lombardi found on November 27th in a corral at Tuolumne City some 10 or 15 miles distant from accomplice Rushing's ranch. He identified it by brand marks and other indicia. One Baker, who had a ranch in the neighborhood of Rushing's place, saw this animal during the summer, along with other cattle bearing Rushing's brand, on Baker's range. He saw the figure "3" brand on it. Later he saw the same animal. Rushing and two

other men had a rope on her and were leading her. Rushing said they were taking her over to his place. Appellant himself testified that he was the one who was with Rushing and had roped the animal and helped Rushing load her into a truck and take her to the corral in town. Baker was with Lombardi on November 27th at the corral and saw the same animal there.

Turning to the Ghilotti cattle, appellant testified that they were on the Red House Ranch, of which he was foreman, from January 12th to May 25th, when 20 head were taken off by Ghilotti. He became quite familiar with these cattle and knew their marks and brands, had put them through a chute and sheared some at one time. The cattle were all of approximately the same age, about a year and a half old. Ghilotti later found cattle in the same Smith corral in Tuolumne City where the Lombardi heifer was found that he said looked just like those he had lost. Other men, notably Harold Lombardi, testified that three head of cattle, two alive and one dead, were found in or near that same corral at the same time, one of which at least bore the marks and brands of Ghilotti's missing cattle, together with the brand of Rushing, and one of which was the other missing heifer belonging to his uncle Louis.

As heretofore stated, the foregoing evidence is extracted from the record wtihout including therein any evidence of the accomplice Rushing. Of course we have not included evidence contradictory thereto produced by appellant as under the well-known rule it would be futile to do so when testing the record under a claim that the evidence is insufficient to support the judgment appealed from.

Turning now to the testimony of Rushing, the accomplice, we find him stating that at a time before any of the cattle with which we are concerned here were missing from the Red House Ranch appellant and he entered into an agreement whereunder appellant was to bring cattle to Rushing's ranch for pasture and care and when the same were sold the two would share the proceeds; that thereafter and about mid-March appellant brought two cattle to Rushing's ranch about 11 o'clock at night; that they were white-faced heifers about two years old; that near the end of April appellant brought two more white-faced heifers about the same age to Rushing's ranch. At that time Rushing said he was employed at the Red House Ranch under appellant and assisted appellant in loading the heifers and hauling them to his ranch. Near the

end of June he said appellant brought two more heifers to his ranch around 10 o'clock at night. In all, seven cattle were brought, one a young calf. On all but two Rushing's brand was placed, appellant assisting in the branding; that these same cattle were later brought to Tuolumne City and placed in the Smith corral where they were when Lombardi and other witnesses saw them; that appellant and Rushing brought one to Tuolumne City. It was made sufficiently clear in the record that the Lombardi and Ghilotti cattle were brought to Rushing's ranch, later taken to the corral in Tuolumne City and that numbers of them, besides the brands of their owners, bore Rushing's brand. Rushing further testified that on several occasions, and in line with the original understanding between him and appellant, the appellant delivered food for the cattle at the Smith corral, consisting of cottonseed oil cake and hay.

It may be said additionally that appellant gave a different story explaining his presence at various times on the Rushing ranch, his joining in the branding of cattle there, his roping, handling and helping to truck the Lombardi heifer into the Smith corral and his furnishing of feed. Concerning the feed he said that Rushing asked him to go in with him in feeding certain cattle that were on Rushing's place so as to make them marketable; that he agreed to do so if the cattle were brought in and corralled at Tuolumne City, explaining that feeding for market could not be properly done with cattle that were out on range; and explaining generally why he thought the deal as he said it was would be profitable to him. But the trial court chose not to believe this explanation, and we are bound to follow the trial court since conflict is involved.

Considering the testimony as a whole, including that of the accomplice, it is apparent from what has been said that the judgment finds sufficient support in the evidence. Clearly, these cattle were stolen and, accepting the accomplice's testimony, appellant participated in the theft.

As to the corroboration, the rules for testing its sufficiency have been recently stated by this court in *People* v. *Griffin*, 98 Cal.App.2d 1, 24 [219 P.2d 519], as follows:

"It is not necessary that the corroborative evidence prove independently either that the defendant is guilty of the offense or that he is guilty beyond a reasonable doubt. . . . If this were not true and if it were required that a complete case for the prosecution be established without reference to the

testimony of the accomplice, there would then be no occasion to offer the accomplice as a witness.

"Sufficient corroboration may be furnished by the defendant's own testimony . . ., or by admissions or confessions made by him . . ., or by silence in the face of an accusatory statement . . . .

"The entire conduct of the parties, their relationship, acts, and conduct during and after the crime, may be taken into consideration by the jury in determining the sufficiency of the corroboration. . . .

"If the corroboration is inculpatory it is not essential that it extend to all of the elements of the offense, nor to every fact and detail included in the testimony of the accomplices.

"Conversely, such evidence is sufficient if it tends in some slight degree, at least, to implicate the defendant. It need not be strong. . . .

"The testimony of an accomplice need not be corroborated by direct evidence, or, stated in another way: Circumstantial evidence suffices for the purpose of corroboration. . . .

"It is sufficient, even though circumstantial and slight, if the connection of the defendant with the alleged crime may be reasonably inferred from the corroborative evidence. . . .

"The corroborating evidence is sufficient if it connects the defendant with the commission of the crime in such a way as reasonably to satisfy the fact-finding body that the accomplice is telling the truth. . . . In the Trujillo case [32 Cal.2d 105 (194 P.2d 681)], *supra,* our Supreme Court said, at page 110: 'Such corroboration must create more than a suspicion of guilt, but is sufficient even though it "be slight and, when standing by itself, entitled to but little consideration."' . . .

"In *People* v. *Henderson* [34 Cal.2d 340 (209 P.2d 785)], *supra,* at page 343, the following language is used: 'The evidence of inculpatory participation need not be direct nor extend to every fact and detail. It may be circumstantial and is sufficient, even though slight, if it tend to connect the defendant with the commission of the crime. . . .'"

In *People* v. *Newland,* 15 Cal.2d 678, 681 [104 P.2d 778], the Supreme Court had occasion to pass upon the rule as to the binding effect upon an appellate court of the inferences drawn by the trier of facts from circumstantial evidence which might reasonably be reconciled with innocence as well as with guilt. The court said:

"'. . . The determination of a charge in a criminal case involves proof of two distinct propositions: First, that the

offense charged was committed, and second, that it was perpetrated by the person or persons accused thereof. . . . We must assume in favor of the verdict the existence of every fact which the jury could have reasonably deduced from the evidence, and then determine whether such facts are sufficient to support the verdict.' If the circumstances reasonably justify the verdict of the jury, the opinion of the reviewing court that those circumstances might also reasonably be reconciled with the innocence of the defendant will not warrant interference with the determination of the jury. . . . In the Perkins case [8 Cal.2d 502 (66 P.2d 631)] this court expressly rejected the application of the statement from the Staples case [149 Cal. 405 (86 P. 886)] to a situation which involved only circumstantial evidence. As pointed out by the court the rule that the circumstances relied upon by the prosecution must be consistent with guilt and inconsistent with an hypothesis of innocence is a rule of instruction for the jury, and is not the rule for the guidance of the court on review. It said: 'The rule above announced does no more than to instruct the jury that, if a reasonable doubt is created in their minds for any reason, they must acquit the defendant. But, where the jury rejects the hypothesis pointing to innocence by its verdict, and there is evidence to support the implied finding of guilt as the more reasonable of the two hypotheses, this Court is bound by the finding of the jury.' "

Because the testimony in this case was to a large degree circumstantial we have been at pains to study the record carefully and have hereinbefore set forth in considerable detail the testimony which in our opinion supports the judgment. We have done this both from the aspect of the entire testimony, including that of the accomplice, and from that of the corroborating testimony justifying consideration of the testimony of the accomplice. We think the contention that the corroborative testimony does not measure up to the tests cannot be sustained. Take the case of the Lombardi heifer found at last in the Smith corral, where it was admittedly being fed by appellant and the accomplice. Appellant had seen her in the Red House Ranch field; he knew her marks and brand and had promised to look for her. He finds her near the accomplice's ranch, ropes and handles her and joins in taking her to the corral where she is kept until found by her owner. The court could reasonably find his acts directly inculpatory notwithstanding his testimony that when he handled the heifer he could not see a brand. Lombardi could see it.

Turning next to the Ghilotti cattle, appellant had had these cattle under his direct charge and supervision for a considerable time. The entire 25 head which Ghilotti placed on the ranch under appellant's charge were to range there and did range there for a period exceeding four months, with the exception of the five which at the end of that period were not found. Appellant has, in his own words, handled cattle since he was old enough to climb on a horse. Such men are skillful in reading and remembering marks and brands. The trial court could reasonably infer that the cattle which were placed in appellant's charge and were missing when he was called upon to redeliver the bunch could not be handled by him thereafter without recognition by him. Yet in November admittedly he was engaged in feeding several of these same missing cattle in order that they might be fattened for market. These Ghilotti cattle found in the feed corral in Tuolumne City had been stolen, as is sufficiently clear from the testimony. The same must be said of the Lombardi cattle.

We hold the corroborative evidence to be sufficient and the whole evidence to satisfactorily support the judgment.

The judgment is affirmed.

Adams, P. J., and Peek, J., concurred.

A petition for a rehearing was denied January 23, 1951, and appellant's petition for a hearing by the Supreme Court was denied February 5, 1951. Carter, J., and Schauer, J., voted for a hearing.