[Crim No. 2387.  Third Dist.  Jan. 21, 1953.]

THE PEOPLE, Respondent, v. BIRCHIE H. JORDAN, Appellant.

Birchie H. Jordan, in pro. per., for Appellant.

Edmund G. Brown, Attorney General, and Doris H. Maier, Deputy Attorney General, for Respondent.

SCHOTTKY, J.—The appellant, Birchie H. Jordan, was convicted by a jury of first degree murder and his punishment fixed at life imprisonment.  This appeal is from the judgment entered in accordance with said verdict.  No motion for a new trial was made.  This case is before this court for a second time, the previous conviction and judgment of first degree murder having been reversed in *People* v. *Petree,* 109 Cal.App.2d 184 [240 P.2d 327].

As in the previous appeal, appellant's contention is that the verdict of the jury against him was based solely upon the uncorroborated testimony of Alfred F. Peterson who admitted that he was an accomplice, and, as in the former appeal, the sole question before us is whether there was sufficient corroboration of Peterson's testimony to sustain the verdict and judgment.

On the evening of October 12, 1949, at about 6:45 p.m., Robert M. Davidson was shot and killed during the perpetration of a robbery of the Clarksville store in Clarksville, El

Dorado County, California. The robber who fired the shots was identified as Bruce Petree, and appellant allegedly helped to plan the robbery and acted as lookout during the commission of the robbery and killing.

The testimony of Alfred F. Peterson, admittedly an accomplice, was substantially as follows: On October 11, 1949, several guns were stolen from Fisher's Hardware Store and hidden on a hill near his and Petree's home; one of the guns was a .38 Colt revolver and the other a .22 Remington pump gun. He and Petree, driving in Petree's black 1937 Ford coupé, picked up appellant Jordan in Diamond Springs on Octber 12, 1949, drove to El Dorado to get some beer, then went to the place where the guns were hidden, got the .38 Colt and the .22 rifle, placed them in the car, and returned to El Dorado. They stopped at Diamond Springs where Jordan purchased some .38 shells and then returned to El Dorado for more beer. They then drove toward Shingle Springs, and a conversation was had regarding the proposed holdup of the Clarksville store. About a mile and a half past Shingle Springs they stopped for gasoline at about 6 or 6:30 p.m., at a Shell service station called Art's Garage, remaining there about 15 minutes. About a mile past the service station they stopped and appellant Jordan had some roadside target practice with the pistol. They finally drove to Clarksville, passed through, turned the car around about a quarter of a mile beyond Clarksville, waited for about 10 minutes, drove back about a few hundred feet past the Clarksville store and stopped the car. By this time it was dark and there were lights on in the store and on the car. Jordan and Petree got out of the car, Jordan taking the pump gun and Petree the pistol; Peterson was told to drive. Jordan gave Petree his brown hat and Petree put on an army jacket and a pair of sunglasses. Jordan told Petree to go into the store as the proprietor would know Jordan. Peterson watched through the rearview mirror of the car and could see them proceed for about 50 feet toward the store. Within a few minutes he heard two or three shots and both men ran back to the car with the guns in their hands. Petree said he thought he had killed somebody in the holdup and they both threatened Peterson not to say anything to anyone. Peterson drove to Perkins and turned off on the Jackson road. En route to Jackson they dispossessed themselves of the guns and jackets; they made several stops for drinks before reaching Jackson. They returned from Jackson by Plymouth and left Jordan off in El Dorado at about

11 p.m. Petree and Peterson then went back to Peterson's house.

There was further testimony that shortly after 11 p.m. Deputy Sheriff Carlson and City Police Officer Bagwell of Placerville drove up to Petree's house and observed his 1937 black Ford coupé in the yard and noted that the hood of the automobile was warm. Carlson knocked on the door of Petree's house and Petree opened the door, but Carlson did not see any other persons present. Witnesses present in the Clarksville store during the holdup and killing testified that Petree was attired in brown hat and glasses, as well as black jeans, dark shoes and army jacket, and that he carried what was apparently a new pistol which he waved and later fired. The testimony of the expert witness who examined the bullets retrieved from the scene of the shooting was to the effect that they had been fired from a Colt type .38 caliber revolver that was either new or in new condition.

The witness Madeleine D. Moseley, who conducted the lunch counter in the Clarksville store, testified that she heard a car drive up shortly before Petree came into the store.

The witness Barnett Huse, an investigator for the Bureau of Criminal Identification and Investigation in the California State Department of Justice, testified as to a conversation with appellant, Birchie H. Jordan, in the office of the sheriff of El Dorado County on November 1, 1949. The following appears in his testimony:

"In substance, Mr. Roberts, the defendant was questioned as to whether or not he was with Petree and Peterson on the evening of October 12, 1949, where they were and how he would trace any of the occurrences that he described. Mr. Jordan corroborated the statement of the other men that we questioned, that they were together, they had been together at all times, but he was able to give us times and places only in a relative manner.

"Mr. Jordan stated that he had been employed that day, that he was working as a bartender for one of the local places, and that the time he was through work depended on the time when the owner of the establishment relieved him, that the owner took the night shift; that he worked days, and that this time varied between four thirty and sometimes six thirty in the evening; that following that, that he and Peterson and Petree went in the Petree car to Plymouth and Jackson. I think they mentioned stopping at Sutter Creek, and that they returned then to El Dorado, arriving there shortly before

eleven o'clock, but he was with the other boys at all times that evening, that they had been together at all times.

"He identified the two boys as Alfred Peterson and Bruce Petree. They were in Petree's car, and they left at approximately six or six thirty on the evening of October 12th. They went to Jackson by way of Plymouth; they didn't deviate from that road."

One Paul Baer, who did not testify at the previous trial, testified at the second trial that he knew Jordan and had seen and met him in Kelly's Bar in El Dorado, and that he also knew Petree and Peterson and was familiar with Petree's black 1937 Ford coupé. He testified that on October 12, 1949, he was working at Art's Garage below Shingle Springs; that he saw Petree's car come into the station just before dusk, at about 6 or 6:30, and that he filled it with gas; that Petree, Jordan and Peterson were together, with Petree driving. Baer testified further that appellant Jordan wore a brown hat with the brim turned up, a brown suit, and shirt with open collar, and that Petree and Peterson wore sport clothes. The car was driven into the station from the direction of Placerville and left in the direction of Sacramento, and that the three men remained at the service station for some 10 to 20 minutes.

Appellant did not take the stand in his own defense, but called as witnesses Harry Sadler, the owner of Kelly's Bar, Woodrow Wilson Downing, and James Evers, the owner, at the time of the robbery, of Art's Garage. He questioned them as to their knowledge of his whereabouts on the night in question. None of them remembered seeing him on that night.

Appellant contends that the only additional evidence adduced by the People at the second trial was that of the witness Paul Baer, and appellant argues that this still does not fulfill the dominant requirement of section 1111 of the Penal Code requiring that the testimony of an accomplice must "be corroborated by such other evidence as shall connect the defendant with the commission of the offense."

If appellant's contention that the only additional evidence adduced at the second trial was that of Paul Baer were correct, there would be considerable merit in appellant's argument that the evidence does not meet the requirements of section 1111. Upon the former appeal this court was not satisfied that there was sufficient corroboration of the testimony of the accomplice. We there said at page 188: "There is no independent evidence that Jordan was with Petree

and Peterson when the crime was committed, nor do such conflicts in his statements to officers as to the time he joined them that evening show that he was with them at any particular time. Though such conflicting statements may have tended to discredit him as a witness, they are not evidence of the fact as to when he did join Peterson and Petree that evening.''

■ However, in the instant appeal the testimony of the witness Barnett Huse, hereinbefore quoted, shows that appellant admitted that he and the accomplice Peterson and Petree were together at all times on the night of the crime. This corroborates the story of the accomplice that appellant was with him at the scene of the crime. Although the witness Huse testified at the former trial, the admission of appellant that he was with Peterson and Petree at all times on the night of the crime was not brought out clearly. Appellant was an uncle of Petree, and Petree was a brother-in-law of Peterson. The testimony of the witness Baer shows that shortly before the crime was committed appellant, Peterson and Petree stopped at Art's Garage, that appellant was wearing a brown hat, and the others wore sports clothes and no hat, and that all three drove off in the direction of Sacramento. Shortly thereafter a car drove up to near the store at Clarksville and Petree entered the store wearing a brown hat.

We believe that this evidence tends to corroborate the story of Peterson that appellant aided and abetted in the commission of the robbery and murder and acted as lookout while Petree went in to rob the store.

In the case of *People* v. *Griffin*, 98 Cal.App.2d 1 [219 P.2d 519] (hearing denied), this court held that it is not necessary that the corroborative evidence prove independently that the defendant is guilty or that it extend to all of the elements of the offense; that circumstantial evidence may suffice; and that corroborative evidence may be sufficient, even though slight, if the connection of the defendant with the crime reasonably may be inferred therefrom. We there said, at page 24:

''It is not necessary that the corroborative evidence prove independently either that the defendant is guilty of the offense or that he is guilty beyond a reasonable doubt. [Citing cases.] If this were not true and if it were required that a complete case for the prosecution be established without reference to the testimony of the accomplice, there would then be no occasion to offer the accomplice as a witness.

"Sufficient corroboration may be furnished by the defendant's own testimony [citing cases], or by admissions or confessions made by him [citing cases], or by silence in the face of an accusatory statement. [Citing cases.]

"The entire conduct of the parties, their relationship, acts, and conduct during and after the crime, may be taken into consideration by the jury in determining the sufficiency of the corroboration. [Citing cases.]

"If the corroboration is inculpatory it is not essential that it extend to all of the elements of the offense, nor to every fact and detail included in the testimony of the accomplices. [Citing cases.]

"Conversely, such evidence is sufficient if it tends in some slight degree, at least, to implicate the defendant. It need not be strong. [Citing cases.]

"The testimony of the accomplice need not be corroborated by direct evidence, or, stated in another way: Circumstantial evidence suffices for the purpose of corroboration. [Citing cases.]

"It is sufficient, even though circumstantial and slight, if the connection of the defendant with the alleged crime may be reasonably inferred from the corroborative evidence. [Citing cases.]

"The corroborating evidence is sufficient if it connects the defendant with the commission of the crime in such a way as reasonably to satisfy the fact-finding body that the accomplice is telling the truth. [Citing cases.] In the Trujillo case, *supra* [32 Cal.2d 105 (194 P.2d 681)], our Supreme Court said, at page 110: 'Such corroboration must create more than a suspicion of guilt, but is sufficient even though it "be slight and, when standing by itself, entitled to but little consideration." [Citing cases.] It is sufficient when the evidence offered as corroborative tends to connect a defendant with the commission of the crime in such a way as reasonably may satisfy a jury that the accomplice is telling the truth. It is not necessary that the accomplice be corroborated as to every fact to which he testifies. If his testimony could be completely proven by other evidence, there would be no occasion to offer him as a witness. [Citing cases.]' "

In *People* v. *Henderson*, 34 Cal.2d 340, the court said at page 342 [209 P.2d 785]:

"Section 1111 of the Penal Code requires corroboration of an accomplice's testimony by such other evidence as shall tend to connect the defendant with the commission of the

offense, and provides that corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof.

"Although the corroborating evidence must raise more than a conjecture or suspicion of guilt, it is sufficient if it connect the defendant with the commission of the crime in such a way as reasonably to satisfy the fact finding body that the accomplice is telling the truth. (*People* v. *Trujillo,* 32 Cal.2d 105, 110-111 [194 P.2d 681].) The evidence of inculpatory participation need not be direct nor extend to every fact and detail. It may be circumstantial and is sufficient, even though slight, if it tend to connect the defendant with the commission of the crime. (*People* v. *Negra,* 208 Cal. 64, 69-70 [280 P. 354]; *People* v. *Yeager,* 194 Cal. 452, 473 [229 P. 40].)

.   .   .   .   .   .   .   .   .   .   .   .   .   .

"The relationship of the men and all of their acts and conduct may be considered in determining whether there are corroborating circumstances. (*People* v. *Ross,* 46 Cal.App. 2d 385 [116 P.2d 81]; *People* v. *Willmurth,* 77 Cal.App.2d 605, 611 [176 P.2d 102].)"

And in the very recent case of *People* v. *Barclay,* 40 Cal. 2d 146 [252 P.2d 321], our Supreme Court said:

"Defendant contends, however, that the fact that there is no evidence to show that a deadly weapon was used in the robbery other than the testimony of Hatfield, admittedly an accomplice, requires the judgment to be modified by reducing the degree of the crime to robbery in the second degree. (Pen. Code, § 1181; see *People* v. *Mendes,* 35 Cal.2d 537, 545-546 [219 P.2d 1].) This contention cannot be sustained. Section 1111 of the Penal Code requires only that the corroborative evidence tend 'to connect a defendant with the commission of the crime in such a way as reasonably may satisfy a jury that the accomplice is telling the truth. It is not necessary that the accomplice be corroborated as to every fact to which he testifies.' (*People* v. *Trujillo,* 32 Cal.2d 105, 111 [194 P.2d 681]; *People* v. *Henderson,* 34 Cal.2d 340, 342-343 [209 P.2d 785].) Proof of the elements of the crime, as contrasted with proof of the connection of defendant with the commission thereof, may rest upon the uncorroborated testimony of an accomplice. (*People* v. *Harper,* 25 Cal.2d 862, 877 [156 P.2d 249]; *People* v. *Negra,* 208 Cal. 64, 69 [280 P. 354]; *People* v. *Griffin,* 98 Cal.App.2d 1, 25 [219 P.2d 519]; *People* v. *Briley,* 9 Cal.App.2d 84, 86 [48 P.2d

734] ; *People* v. *Knowles,* 75 Cal.App. 229, 230 [242 P.2d 508] ; see, 21 Cal.L.Rev. 247.)   The testimony of Ortiz, Davis, and the expert witness constituted sufficient corroborative evidence to connect defendant with the commission of the crime of robbery.   It was unnecessary also to corroborate the testimony of Hatfield that a deadly weapon was used therein.''

Applying the principles laid down in the cited cases to the evidence in the instant case, we are satisfied that the jury was justified in concluding that the evidence other than the testimony of the accomplice Peterson connected appellant with the commission of the crime in such a way as to reasonably satisfy them that the accomplice was telling the truth. No contention is made that the jury was not fully and fairly instructed as to the necessity and degree of corroboration of the testimony of an accomplice required, the sole contention of appellant being that the judgment was based on the uncorroborated testimony of an accomplice.   We are unable to agree with this contention, and conclude from a review of the entire record that the appellant was fairly tried and that the evidence supports his conviction.

The judgment is affirmed.

Van Dyke, P. J., and Peek, J., concurred.

A petition for a rehearing was denied February 2, 1953.