[Crim. No. 4042. First Dist., Div. Two. Dec. 14, 1961.]

THE PEOPLE, Plaintiff and Respondent, v. FRANK O. DYKES, Defendant and Appellant.

Frank O. Dykes, in pro. per., for Defendant and Appellant.

Stanley Mosk, Attorney General, Doris H. Maier, Assistant Attorney General, and C. Michael Gianola, Deputy Attorney General, for Plaintiff and Respondent.

KAUFMAN, P. J.—Defendant, in propria persona, appeals from a judgment rendered on a jury verdict finding him guilty of grand theft (Pen. Code, § 487), burglary (Pen. Code, § 459), and conspiracy with V. T. Shinn and G. Albro (Pen. Code § 182). He argues that the evidence does not support the judgment because the testimony of his accomplices was not sufficiently corroborated and that his conviction for both burglary and grand theft constitutes a double punishment in violation of section 654 of the Penal Code.

The People point out (but do not seriously argue the matter) that the notice of appeal, although timely placed in

the hands of prison officials, was erroneously addressed to the District Court of Appeal rather than the superior court and thus not filed within the time prescribed by section 1239 of the Penal Code and rule 31 of the Rules on Appeal, as the judgment was rendered on March 24, 1961. The record indicates that on March 30, 1961, the defendant filed his notice with this court and on April 5 with the superior court. We think that under the circumstances here presented, the notice was constructively filed within the time prescribed by the Rules on Appeal (*People v. Johnson*, 175 Cal.App.2d 290 [345 P.2d 952]; *People v. Tenney*, 162 Cal.App.2d 458 [328 P.2d 254]; *People v. Sills*, 156 Cal.App.2d 618 [320 P.2d 224]; *People v. Hawkins*, 164 Cal.App.2d 824 [331 P.2d 171]; *People v. Graff*, 104 Cal.App.2d 32 [230 P.2d 654]).

The crimes which gave rise to this prosecution occurred on December 4, 1960, at the Shadow Lodge bar located about ¾ of a mile from Trinidad, in Humboldt County. The record reveals the following events, which are set forth more or less in chronological order: On Saturday evening, November 26, 1960, Miss Albro went to the Shadow Lodge bar. She lived nearby and was a frequent customer, known to both the owner, Earl Morris, and the regular bartender, "Dick" Hill. She knew that every night after closing the Shadow Lodge, Hill locked the night's receipts in a money box and then took the box to his cabin behind the lodge. Shinn lived at Miss Albro's home after his release from jail in October, 1960. The defendant, who was a friend of Shinn's, often visited him there.

About midnight on November 26, Miss Albro informed Hill that she had a flat tire and asked to be driven home. He did so, and returned before closing time. During the next week, the defendant, Miss Albro and Shinn had several conversations about the flat tire incident and "figured that if it worked once, it would work again." They decided to use Miss Albro to lure Hill away from his cabin, with a ruse about a flat tire one evening after he had closed the bar and locked up the money so that they could steal the money while Hill took Miss Albro home. Shinn and the defendant told Miss Albro that if she did not get Hill out of the way, they would get the money one way or another, even if they had to take it from him. Accordingly, on Saturday, December 3, the defendant, Shinn and Miss Albro met at her house about 6 p. m. and again reviewed their plans. After instructing Miss Albro to park her car (a blue Ford) at the side of Shadow Lodge, the de-

fendant and Shinn went to the home of the Stevens sisters, their respective fiancées.

Miss Albro arrived at Shadow Lodge about 7 p. m., parked her car as she had been told to do, and remained in the bar all evening. Just before closing time, she told Hill that she was going home and departed. She returned in a few minutes and told Hill that she had a flat tire again. After Hill informed her that it would be some time before he could take her home as he had to finish cleaning up the bar, she replied that she would telephone her home and see if anyone could come for her. She got some change, went to the telephone, and soon returned to tell Hill that no one was home. Hill then agreed to take her home when he was finished.

Upon completing his duties, Hill put all of the money and cash register receipts into the tin box. He did not count the money, but was certain that the amount was over $235 as it consisted of all of Friday's and Saturday's receipts. Miss Albro and Hill left the bar about 2:15 or 2:30 a. m. About 8 p. m., the defendant, Ernestine Stevens,, Shinn and Carol Stevens had left the Stevens home for Miss Albro's. The defendant took Ernestine home about 12:30 a. m. and returned to Miss Albro's.

Shortly thereafter, the defendant and Shinn left in the defendant's automobile, arriving at the Shadow Lodge about 1:45 a. m. They parked next to Miss Albro's car and got out. While the defendant looked in the window of the lodge, Shinn, by loosening the valve, let the air out of Miss Albro's left rear tire. Then they drove the defendant's car across the road and concealed it behind some brush, and stationed themselves behind the lodge. From their vantage point behind a big stump, they could see into the lodge as well as Hill's cabin with his car parked in front.

After about 40 minutes of waiting in the rain, they saw Hill and Miss Albro leave the bar. Miss Albro waited at Hill's car, while Hill went to his cabin and put the money box into his dresser drawer. He then locked the front door of his cabin and left with Miss Albro in his car. The defendant and Shinn immediately went to the back of Hill's cabin, where the defendant boosted Shinn up so he could enter through the top of the rear window. While the defendant remained outside as a lookout, Shinn took the money box from the dresser drawer and emerged through the front door of the cabin saying: "I got it, let's go." Both ran to the defendant's car and drove very quickly to Miss Albro's, as they hoped to arrive before

Miss Albro and Hill, in order to create a strong alibi. However, they passed Hill going in the opposite direction on his way back home from Miss Albro's house.

On the way, Shinn pried open the locked box with a screw driver, placed its contents into a sack, and threw the box into the river. The defendant and Shinn arrived at Miss Albro's house about 3 a. m. They carried the sack into the house and counted the money with Miss Albro's help. They counted $278 in change and bills, besides a number of checks, which they burned. The appellant and Shinn each took $67, and hid the remaining balance, mostly in change, in a potato sack and left it on the kitchen floor for the night, while they went to sleep.

When Hill returned to his cabin, he noticed that his dresser drawer was open about half an inch. He pulled out the drawer and discovered that the cash box was gone. Immediately, he called Mr. Morris and the police, who arrived about 3:30 a. m. and ascertained that someone had entered through the right rear window.

Between 4 and 4:30 a. m., the police went to Miss Albro's home to ask her if Hill had put the money in his cabin when he took her home. Shinn let the police officers in and then went back to sleep. Later the same morning, Shinn hid the balance of the money in the potato sack in a panel in the wall of Miss Albro's home. About 10 a. m., two deputy sheriffs arrived at Miss Albro's home, and found the defendant, Shinn, Miss Albro and one of the Stevens girls. When one deputy asked his name, the defendant replied: "Frank Lane." However, after looking at the registration slip of the defendant's car, the deputy inquired: "Who's this Dykes?" The defendant replied: "That's me, I go by Lane" and also lied about his arrest record.

Shortly thereafter, the deputies went to Shadow Lodge to examine Miss Albro's car. They discovered the loose valve, tightened it, and pumped up the tire. Two hours later, the tire was still up and full of air. Thereafter, Deputy Johnson requested a record check on the defendant. The defendant was arrested on December 6 and interrogated. At the time of his arrest, he was with Shinn and the Stevens girls. The defendant admitted his participation in the burglary and made a full confession, saying: ". . . but if I give you the whole story Shinn will kill me. He has threatened me already." Later, he attempted to exonerate himself by stating that he did not know why he and Shinn went to Shadow Lodge on the

night in question, etc. This later conversation was tape-recorded and introduced into evidence at the trial.

Immediately after the arrest of the defendant, Shinn went to Miss Albro's house, took the money hidden in the wall panel, and left town. After several days of traveling to different places, he gave himself up in Hayward. Upon his return to Humboldt County, he entered a plea of guilty to the Shadow Lodge burglary. At the trial, Miss Albro was promised and granted immunity to testify.

The defendant took the stand in his own defense, and denied his participation in the burglary or knowledge of it. He stated that he was an innocent bystander, totally unaware of any criminal activity until after Shinn returned from the Hill cabin with the loot and said: "Let's get the heck out of here." He explained the $40 found in his possession at the time of his arrest as the remainder of about $87 cash which his mother had given him on the Saturday before his arrest, $37 in wages and $50 for his birthday on Sunday.

 The first argument on appeal is that the evidence does not support the judgment because the testimony of Shinn and Miss Albro was not corroborated as required by section 1111 of the Penal Code. It is well established that only slight corroboration is required (*People* v. *Walters,* 165 Cal.App.2d 326 [331 P.2d 1037]; *People* v. *Pearson,* 168 Cal. App.2d 323 [335 P.2d 729]), and may be furnished by the surrounding circumstances or the defendant's own testimony (*People* v. *Wade,* 53 Cal.2d 322 [348 P.2d 116]; *People* v. *Richardson,* 182 Cal.App.2d 620, 622-623 [6 Cal.Rptr. 61]; *People* v. *Polsalski,* 181 Cal.App.2d 795 [5 Cal.Rptr. 762]).

 Here, the defendant's own testimony places him near the scene of the crime; from his admitted lies to the officers at the time of his arrest as well as the many inconsistencies in his testimony at the trial and extrajudicial statements, the jury could infer a strong consciousness of guilt (*People* v. *Osslo,* 50 Cal.2d 75 [323 P.2d 397]). The jury was carefully and properly instructed as to how to regard the testimony of the accomplices, particularly that of Miss Albro, as well as that the defendant's guilt could not be established solely by his own confessions and admissions. The weight to be given to the corroborating evidence was for the jury (*People* v. *Trujillo,* 32 Cal.2d 105, 112 [194 P.2d 681]). Under the circumstances here presented, the jury was justified in concluding that evidence other than the testimony of the accomplices connected the defendant with the commission of

the crimes in such a way as to reasonably satisfy them that the accomplices were telling the truth (*People* v. *Jordan*, 115 Cal.App.2d 452 [252 P.2d 328]; *People* v. *Williams*, 101 Cal. App.2d 624 [226 P.2d 9]; *People* v. *Griffin*, 98 Cal.App.2d 1 [219 P.2d 519]).

██ The second contention on appeal is that the conviction of both burglary and grand theft cannot be sustained as it is double punishment for one act or transaction in violation of section 654 of the Penal Code.

Defendant here relies on the recent case of *Neal* v. *State*, 55 Cal.2d 11 [9 Cal.Rptr. 607, 357 P.2d 839], where our Supreme Court held that the defendant (who had thrown gasoline into the bedroom of two persons and ignited it) could not be convicted of both arson and attempted murder. The court indicated that section 654 of the Penal Code " '. . . has been applied not only where there was but one "act" in the ordinary sense . . . but also where a course of conduct violated more than one statute and the problem was whether it comprised a divisible transaction which could be punished under more than one statute within the meaning of section 654.' "

*In re Dowding*, 188 Cal.App.2d 418 [10 Cal.Rptr. 392], petition for hearing denied by the Supreme Court, also cited by the defendant, is here in point. There the defendant unlawfully entered a drug store for the purpose of robbing the druggist, and was convicted of robbery and burglary, the information charging that the burglary was part of the act, transaction and event described in the robbery count. Following *Neal*, the court held that the conviction of both offenses could not stand.

The trial court was in error in permitting defendant to stand convicted of both burglary and grand theft.

Judgment reversed with directions to the trial court to enter judgment against defendant for violation of section 182 of the Penal Code and for violation of Penal Code section 459, and to dismiss count two, violation of Penal Code section 487.

Shoemaker, J., and Agee, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied February 7, 1962.